UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MARTEZ HUNTER,                           )
                                         )
                    Petitioner,          )
                                         )
        v.                               )        No. 4:15 CV 494 DDN
                                         )
TERRY RUSSELL,                           )
                                         )
                    Respondent.          )

## MEMORANDUM

This action is before the Court upon the amended petition of Missouri state prisoner Martez Hunter, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

## I. BACKGROUND

Petitioner Hunter was accused of committing a series of armed robberies and carjackings in the City of St. Louis between June 8 and June 9, 2009. (Doc. 18-5 at 2). On July 23, 2010, a jury in the Circuit Court of the City of St. Louis convicted him of twelve counts of first-degree robbery, thirteen counts of armed criminal action, and one count of attempted robbery. On September 9, 2010, the trial court sentenced petitioner to concurrent terms of thirty years imprisonment for each robbery, thirty years for each armed criminal action, and fifteen years for the attempted robbery. Petitioner subsequently filed a direct appeal, moved for post-conviction relief, and appealed the denial of his post-conviction relief. He filed the instant petition for a writ of habeas corpus in this Court on March 19, 2015.

## II. PETITIONER'S ALLEGED GROUNDS FOR RELIEF

Petitioner raises four grounds for relief, each comprised of several parts:

(1) Petitioner's trial counsel rendered constitutionally ineffective assistance by failing to present petitioner's alibi and advising him not to testify at trial; failing to investigate and discredit victim Larry Bradley's testimony; and failing to call petitioner's girlfriend at the time, Shontay Grissom, as a witness.

(2) The trial court erred in denying petitioner's motion to suppress, admitting testimony and exhibits regarding in-court and out-of-court identifications, and admitting testimony regarding petitioner's statements to police.

(3) The trial court erred in admitting certain photographic evidence; allowing the state to use a police report to refresh the testimony of a witness, over petitioner's objection; admitting testimony of Demarco Moorehead regarding items stolen from Larry Belcarist, over petitioner's objection; and overruling petitioner's objections to the state's closing argument.

(4) The trial court erred in sustaining the state's objection to defense counsel's argument that the state had not shown petitioner acted alone in the armed criminal action counts and by permitting extensive argument by the state that it need not prove petitioner actually used a weapon to convict him as a principal for armed criminal action.

(Doc. 1).

Respondent contends that the arguments in Ground 1 are procedurally barred, and that one that was addressed by the state courts was not decided contrary to established federal law; Grounds 2 and 3 are procedurally barred and are meritless; and Ground 4 must be denied because the decision of the Missouri Court of Appeals denying it was not contrary to or an unreasonable application of clearly established federal law. (Doc. 18).

## III. EXHAUSTION OF REMEDIES AND PROCEDURAL BAR

Although petitioner filed his original and amended habeas petitions in this court within the one-year limitations period, Congress requires that state prisoners exhaust their state law remedies for such grounds. [1] See 28 U.S.C. § 2254(b)(1)(A). A state prisoner

_____

[1] Congress provides a one-year window, calculated from the conclusion of direct state review, in which a habeas applicant may file a petition for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1). Direct review concludes when the time limit for seeking further

has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

It is not sufficient for a petitioner simply to have no remaining procedure for bringing a claim to the state court. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam). Rather, a petitioner must have fairly presented the substance of each federal ground to the trial and appellate courts. *Id.* To preserve issues for federal habeas review, a state prisoner must fairly present his grounds for federal habeas relief first to state courts during direct appeal or during post-conviction proceedings. *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1996). "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred,

---

review expires. *Gonzales v. Thaler*, 132 S. Ct. 641, 653-54 (2012). Under Missouri Supreme Court Rules 30.01 and 81.04, the time limit for filing a notice of appeal expires ten days after sentencing.

A pending state post-conviction action or other state collateral review tolls the one-year limitations period. 28 U.S.C. § 2244(d)(2). The trial court sentenced petitioner on September 9, 2010, and petitioner timely filed a notice of appeal on September 17, 2010. Petitioner directly appealed his conviction and sentences, arguing that the trial court erred in sustaining the state's objection to one of defense counsel's due process arguments and in permitting the state to argue that it need not prove he used a weapon to convict him for armed criminal action. (Doc. 1 at 3). The Missouri Court of Appeals affirmed the judgment on February 28, 2012. *State v. Hunter,* 368 S.W.3d 189 (Mo. Ct. App. 2012). He applied for transfer to the Supreme Court, but this was denied on July 3, 2012, with the Court of Appeals issuing its mandate on July 10, 2012. *State of Missouri v. Martez Hunter*, SC92575 (Mo. July 3, 2012).

The day after, on July 11, 2012, the one-year limitation period began to run. Forty days later, petitioner timely filed a motion for post-conviction relief in the Circuit Court, on August 20, 2012, stopping the one-year clock. *Martez Hunter v. State of Missouri*, 1222-CC09546 (Aug. 20, 2012). It was denied on December 3, 2010, and petitioner filed a notice of appeal on December 18, 2013. *Id.* The Missouri Court of Appeals affirmed the motion court's denial on February 3, 2015. *Hunter v. State*, 453 S.W.3d 865, 866 (Mo. Ct. App. 2015). The mandate was issued February 26, 2015, re-starting the one-year clock. *Martez Hunter v. State of Missouri*¸ ED100851 (Mo. Ct. App. Feb. 26, 2015). Petitioner filed his federal petition for a writ of habeas corpus less than one month later, on March 19, 2015, a total of 61 days into the one-year limitations period. (Doc. 1).

there is a procedural default". *Sloan v. Delo*, 54 F.3d 1371, 1381 (8th Cir. 1995) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991)).

A petitioner may overcome the procedural bar if he can demonstrate legally sufficient cause for the default and actual prejudice resulting from it, or demonstrate that failure to review the claim would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. To establish cause for a procedural default, petitioner must "show that some objective factor external to the defense impeded" his "efforts to comply with the State's procedural rule." *Id.* at 753. To establish actual prejudice, petitioner "must show that the errors of which he complains worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999) (internal citations omitted).

As discussed above, petitioner filed a direct appeal, a motion for post-conviction relief, and an appeal of the denial of his motion for post-conviction relief. Petitioner raised Ground 4 on direct appeal and the Ground 1 sub-argument about calling Ms. Grissom as a witness in his motion for post-conviction relief and subsequent appeal. *Hunter v. State*, 453 S.W.3d 865, 866 (Mo. Ct. App. 2015); *State v. Hunter,* 368 S.W.3d 189 (Mo. Ct. App. 2012).

Petitioner has not shown that he exhausted his remedies regarding the remainder of Ground 1, Ground 2, or Ground 3 in Missouri state court proceedings. He argues he did not do so because he was firmly relying on the points that *were* raised for relief, based on his own belief and on the advice of counsel and because he was unaware of any opportunity to raise additional claims at that stage (Doc. 1 at 8, 21, 22, 30) and because his attorney failed to discover and raise these issues. (Doc. 1 at 8, 21, 22, 30; Doc. 27 at 2). Petitioner argues that there is a reasonable probability he would have prevailed on appeal had his attorney raised these issues. (Doc. 27 at 2). As discussed below, this argument is without merit. Petitioner has not presented any legally sufficient reason why he failed to raise these grounds in state court, nor has he demonstrated actual prejudice arising from the default or that this court's failure to consider these grounds would result

in a miscarriage of justice. Accordingly, petitioner's Grounds 1-3, with the exception of his argument as to Ms. Grissom, are procedurally barred.

Nevertheless, if this court concludes that the procedurally barred grounds are without merit, Congress has authorized it to consider them and to dismiss them. 28 U.S.C. § 2254(b)(2). The undersigned has considered all of petitioner's federal grounds and concludes that they are without merit.

## IV.  STANDARD OF REVIEW

For petitioner's Grounds 4 and part of 1, which were adjudicated by a Missouri court, the Antiterrorism and Effective Death Penalty Act (AEDPA) requires that habeas relief may not be granted by a federal court on a claim that has been decided on the merits by a state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is contrary to clearly established federal law if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Thaler v. Haynes*, 130 S. Ct. 1171, 1174 (2010) (per curiam) (citations omitted). This standard is difficult to meet, because habeas corpus "is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citation omitted). A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Thaler*, 130 S. Ct. at 1174.

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 130 S. Ct. 841, 845 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). Clear and convincing evidence that factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 130 S. Ct. at 845.

For the remainder of petitioner's Grounds, which were not adjudicated on the merits by a state court, the pre-AEDPA standard for habeas review governs. *Gingras v. Weber*, 543 F.3d 1001, 1003 (8th Cir. 2008) ("Because [petitioner's] apparently unexhausted claim was not adjudicated on the merits, we likely should apply the pre-AEDPA standard of review, rather than the deferential standard of 28 U.S.C. § 2254(d).") (internal citations and quotations omitted). Under the pre-AEDPA standard, the habeas petitioner must show a "reasonable probability that the error complained of affected the outcome of the trial, or that the verdict likely would have been different absent the now-challenged [defect]." *Robinson v. Crist*, 278 F.3d 862, 865-66 (8th Cir. 2002).

## V. DISCUSSION

### A. Ground 1

In Ground 1, petitioner alleges that his trial counsel rendered constitutionally ineffective assistance by failing to present his alibi and advising him not to testify at trial; failing to investigate and discredit victim Larry Bradley's testimony; and failing to call petitioner's girlfriend at the time, Shontay Grissom, as a witness.

#### 1.    Failure to Present Petitioner's Alibi and Advising Him Not to Testify

Petitioner argues that his alibi was never presented and that he felt pressured to make a rushed decision not to testify. Petitioner does not describe what his alibi or testimony would have been, and the only details provided about his discussion with counsel on the issue of his testifying are that it occurred immediately after the presentation of the state's evidence under pressured circumstances, that "petitioner was

provoked by counsel not to testify," and that defense counsel "used acting with another as a defense[,] neglecting petitioner's witness, alibi and testimony as a defense [] trial strategy." (Docs. 1 at 9; 27 at 3).

In *Strickland v. Washington*, the Supreme Court determined that the right to effective assistance of counsel arises from the Sixth and Fourteenth Amendments. 466 U.S. 668 (1984). Under *Strickland*, a petitioner is entitled to federal habeas corpus relief upon a showing that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

Petitioner must prove two elements to prevail on a claim of ineffective assistance of counsel. First, he must demonstrate that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687–88. There is a strong presumption that counsel has rendered constitutionally effective assistance. *Id.* at 690. Counsel's strategic choices made after thorough investigation are virtually unchallengeable. *Strickland*, 466 U.S. at 690–91. Additionally, decisions following reasonable, but less thorough, investigation are to be upheld to the extent that they are supported by reasonable judgment. *Id.*

Second, petitioner must demonstrate actual prejudice by counsel's deficient performance. *Id.* at 687. "[A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 696.

A criminal defendant has a constitutional right to testify on his own behalf, and only the defendant is empowered to waive that right. *Rock v. Arkansas*, 483 U.S. 44, 49-62 (1987); *Francis v. Miller*, 557 F.3d 894, 903-04 (8th Cir. 2009).

At the close of the state's evidence, the trial court questioned petitioner regarding his decision not to testify in his own defense. (Doc. 18-1 at 243-45). Petitioner stated under oath that after discussing the issue with trial counsel he had decided not to testify. *Id.* He stated that his attorney had explained to him his right to testify and that he understood both this right and the fact that the decision to testify was his alone to make. *Id.* Petitioner also stated he understood that if he decided not to testify, the court would

instruct the jury not to draw a negative inference from this. *Id.* At sentencing, petitioner again stated that he had discussed his right to testify with his attorney and had decided against testifying based on this discussion. *Id.*

Petitioner has not alleged any facts that contradict his sworn testimony in the state court. He has not demonstrated that his attorney was incompetent, nor has he demonstrated that had his attorney presented his alibi, the verdict would have been different. He has also not demonstrated that his decision not to testify affected the outcome of the trial. Accordingly, this claim is denied.

### 2.     Failure to Investigate and Discredit Victim Larry Bradley's Testimony

Petitioner argues that his counsel was incompetent in failing to investigate and discredit victim Larry Bradley's testimony. Petitioner alleges that at deposition, Bradley testified he had seen three suspects occupying a car as it approached his truck to rob him. The rear passenger was wearing a white t-shirt and brandishing a chrome handgun. Petitioner alleges that once the police apprehended possible suspects, Bradley was brought to the scene to make identification. Bradley identified one person wearing a plain gray t-shirt, which he believed to be an item in his gym bag that had been stolen, which petitioner alleges Bradley identified by a kitchen stain. Petitioner argues that had the t-shirt been presented to the jury they would have seen no stain. Petitioner alleges this would have discredited Bradley's testimony. *Id.* He argues that counsel's failure to do so fell below the standard of reasonably effective assistance required by the constitution.

In his direct examination at trial, Bradley testified that he was robbed at gunpoint by three individuals, identifying one of them as petitioner. (Doc. 18-1 at 149-56). His testimony about the shirt is as follows:

Q.     Was there something different about what he was wearing when you saw him on the street that night at the arrest location?

A.     Yes. I noticed he was wearing a different shirt.

Q.     And what color was that shirt?

A.     The shirt he was wearing was gray.

Q.     Different than the white one before?

A.     Correct.

Q.     Is that correct?

A.     Yes.

Q.     Okay.  Did you notice anything else specific about that T-shirt?

A.     I noticed that it was mine.

Q.     Mr. Bradley, I'm going to hand you what's been marked as State's Exhibit 31.  Could you take a look at that shirt, please?

A.     Yes.

Q.     Is that your shirt?

A.     Yes, it is.

Q.     And where was that shirt before you were robbed?

A.     It was in one of the three bags that I had in the back seat of the truck.

Q.     Besides being wrinkled and not washed for a while, is that shirt in the same or substantially the same condition as the date that you saw it being worn by one of the men that was arrested that night?

A.     Besides being wrinkled and unfolded, yes, it is in the same condition.

(*Id.* at 154-55).

Bradley did not testify that he identified the t-shirt by a kitchen stain. Accordingly, petitioner has failed to demonstrate that counsel's failure to show the t-shirt to the jury would have affected the outcome of the trial, let alone constituted ineffective assistance.   On the contrary, petitioner's trial counsel appears to have reasonably investigated Bradley: at trial, she cross-examined him about multiple events in his criminal history and also referred to his deposition testimony.  (*Id.* at 157-59).  Petitioner complains that his attorney met with him only three times before trial, but petitioner has not rebutted the strong presumption that his counsel nevertheless rendered constitutionally effective assistance, *Strickland*, 466 U.S. at 690, and he has not demonstrated actual prejudice.  This claim is denied.

### 3.    Failure to Call Shontay Grissom as a Witness

Petitioner raised the third prong of his first ground in state court, maintaining that his trial counsel's assistance was constitutionally ineffective for failing to call as a witness his girlfriend at the time of his arrest, Shontay Grissom.  Petitioner argues she would have testified as to the time he left her house; the description of clothing he was wearing; and the location of her car, which petitioner alleges he had been driving, at the time of his arrest.  Petitioner alleges that he informed his counsel of Ms. Grissom's existence and also provided information on how she could be located.

The decision not to call a witness is a matter of trial strategy and will not support a claim of ineffective assistance of counsel unless the defendant clearly establishes otherwise.  *Hanes v. Dormire*, 240 F.3d 694, 699 (8th Cir. 2001).  Petitioner has not established otherwise.  As the Missouri Court of Appeals explained in its order rejecting this claim,

> The failure to interview a witness is rarely sufficient to support a claim of ineffective assistance of counsel.  *Rutlin v. State*, 435 S.W.3d 126, 131 (Mo. App. E.D. 2014).  To be entitled to an evidentiary hearing on a claim that trial counsel was ineffective for failing to call a witness, the movant must allege: 1) the identity of the witness; 2) what the witness's testimony would have been; 3) that counsel was informed of the witness's existence; and 4) that the witness was available and would have testified.  *Id*. In addition, the movant must show that the witness's testimony would have provided a viable defense.  *Worthington v. State*, 166 S.W.3d at 577.

> In his amended motion, Movant alleged that he informed his attorney about Ms. Brisom [*sic*] and provided counsel with information to locate Ms. Brisom.  He also alleged that the outcome of the trial would have been different because Ms. Brisom's testimony would "show" that Movant did not commit the robberies.  In denying Movant's claim, the motion court found that Movant was not entitled to an evidentiary hearing because he had not made any factual allegations regarding what the testimony of Ms. Brisom would have been and because his trial counsel indicated at the sentencing hearing that she did not investigate the witness for strategic reasons.

> The decision not to call a witness is presumptively a matter of trial strategy and will not support a claim of ineffective assistance of counsel unless the defendant clearly establishes otherwise.  *Rutlin*, 435 S.W.3d at 131.  "As a

matter of trial strategy, the determination to not call a witness is virtually unchallengeable." *Worthington*, 166 S.W.3d at 577. Thus, if the potential witness's testimony would not unqualifiedly support the defense, the failure to call the witness does not constitute ineffective assistance. *Id.*

The record supports the motion court's finding that Movant's trial counsel made a strategic decision not to call Ms. Brisom as a witness. At the sentencing hearing, the trial court questioned defense counsel regarding whether she had investigated Ms. Brisom as a potential witness. In response, counsel indicated that she had not investigated Ms. Brisom for strategic reasons and based on conversations with Movant. Counsel will not be deemed ineffective for failing to call a witness based on strategic reasons. *See, e.g. McIntosh v. State*, 413 S.W.3d 320, 328 (Mo. banc 2013).

Moreover, Movant did not allege that Ms. Brisom was available or that she would have testified. Movant also failed to specify what Ms. Brisom's testimony would have been or explain how the testimony would have provided a viable defense. Movant's conclusory assertion that the outcome of the trial would have been different had Ms. Brisom testified is purely speculative and contradicted by the substantial evidence presented at trial, including his statements to police admitting his involvement in several of the robberies and testimony by several of the victims, many of whom identified Movant. Given the overwhelming evidence of his guilt presented at trial, Movant fails to demonstrate a reasonable probability of a different outcome. Accordingly, the motion court did not clearly err in denying Movant's claim without an evidentiary hearing. Point denied.

(Doc. 18, Ex. 9 at 5-6). This court cannot conclude that the trial court erred in rejecting petitioner's ineffective assistance claim based on counsel's failure to call Ms. Grissom as a witness. Accordingly, Ground 1 in its entirety is without merit.

## B. Ground 2

In Ground 2, petitioner argues that the trial court erred in denying petitioner's motion to suppress and admitting testimony and exhibits regarding in-court and out-of-court identifications and regarding petitioner's statements to police. He did not raise these claims during state court proceedings, so they are procedurally defaulted, but they also fail on the merits.

1.     In-Court and Out-of-Court Identifications

Petitioner argues that any identification would be the result of an unlawful arrest because he was arrested without a warrant or probable cause.  He also asserts that the identifications by witnesses Joel Juarez, Kevin Ahlbrand, Rickie Roberts, Demarco Moorehead, Larry Bradley, and Lucian Robinson were "inherently suggestive and conducive to mistaken identification" because the photographic lineups during which these identifications were made did not show the height and size of the lineup participants, and "some of the victims made their description just based off height and build." (Docs 1 at 18; 27 at 5).  He also argues it was "suggestive" for Mr. Bradley and Mr. Robinson to identify him after they viewed him being removed from a police vehicle and as he stood handcuffed alongside three co-defendants.  (Doc. 1 at 18).

Petitioner's identifications were not the result of an unlawful arrest.  Although he was not arrested pursuant to a warrant, "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). The evidence at trial demonstrated that there was probable cause for petitioner's arrest, because the police spotted a truck reported stolen, chased the truck until it crashed, pursued petitioner and three other individuals on foot after they exited that truck, and arrested petitioner and the three other individuals as a result of that pursuit.  (Doc. 18-1 at 87, 176-84).  This constitutes sufficient probable cause for the officers to arrest petitioner for stealing the truck.

As to petitioner's arguments about the reliability of the identification, "[d]ue process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 239 (2012).  When identification procedures are challenged as unreliable, the court must determine first whether the lineup was "impermissibly suggestive" and, if so, whether "under the totality of the circumstances" the lineup created a substantial likelihood of misidentification at trial.  *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967);

*United States v. House*, 823 F.3d 482, 486 (8th Cir. 2016) (citing *Simmons v. United States*, 390 U.S. 377, 384 (1968)).

The administration of a photographic lineup is not impermissibly suggestive where the agent does not direct the witness's attention to any particular photo. *United States v. Mears*, 614 F.2d 1175, 1177 (8th Cir. 1980). A photographic lineup with the subject depicted as the only individual with a pony tail has been held permissible, *House*, 823 F.3d at 486; photographs of lineup participants with slightly different background colors has been permissible, *United States v. Harris*, 636 F.3d 1023, 1026 (8th Cir. 2011); using a different photograph of the same suspect in two different lineups has been permissible, *United States v. Martin*, 391 F.3d 949, 953 (8th Cir. 2004); and using a display that does not contain several photos or peculiar photos of the defendant alone has been permissible, *Mears*, 614 F.2d at 1177.

Evidence adduced at petitioner's trial established that none of the photos displayed to witnesses singled out petitioner in any way, either by the behavior of the police personnel showing the photos or by the nature of the photos themselves. (Doc. 18-at 91-94, 99-102, 113, 121-23, 130, 141-43). The photographic lineups contained several photographs of individuals with similar characteristics. They were, accordingly, not impermissibly suggestive.

Even if a photo lineup display procedure was unnecessarily suggestive, the identification evidence may admissible if it is nonetheless reliable. *Neil v. Biggers*, 409 U.S. 188, 198 (1972). Reliability depends upon (1) the witness' opportunity to view the suspect at the time of the crime; (2) the witness' degree of attention at the time of the crime; (3) the accuracy of the witness' description of the suspect prior to the identification; (4) the witness' level of certainty at the time of the identification; and (5) the length of time between the crime and the identification. *Manson v. Brathwaite*, 432 U.S. 98, 114-16 (1977).

Joel Juarez, Kevin Ahlbrand, Rickie Roberts, Demarco Moorehead, Larry Bradley, and Lucian Robinson's identifications of defendant were reliable. At trial, Mr. Juarez testified that although petitioner had a partially covered face at the time of the crime and

although it was nighttime, the robbery occurred underneath a street lamp; Mr. Juarez focused on the robber because he was carrying a gun; and Mr. Juarez identified the robber two and a half days later, based on what he remembered of his build and what part of the face he could see. (Doc. 18-1 at 89-93).

Detective Ahlbrand testified that he was in undercover pursuit of the robber's vehicle when the robber made a U-turn and stopped at a curb. (*Id.* at 110-113). The driver's window was down and streetlights were illuminated, and Detective Ahlbrand was able to make a conscious effort to look at the driver as he passed the stationary vehicle. (*Id.*). He got "a good look at that driver," who made eye contact and smiled at detective Ahlbrand. (*Id.* at 113). He identified petitioner as the driver with "[a]lmost 100 percent" certainty. (*Id.*).

At trial, Mr. Roberts stated that on the evening of the robberies in question he was at a loading dock with "ample lighting," when he turned around and saw a man pointing a gun at his co-worker's face. (*Id.* at 118-19). He was approximately six feet away from the gunman and got a "good look" at him, stating that he was wearing a visor, had a thin mustache and goatee, had wide-set eyes, was medium build, and was a little shorter than himself. (*Id.* at 119-20). There were three or four individuals participating in the robbery, but Mr. Roberts focused on the gunman. (*Id.* at 120). Mr. Roberts picked out petitioner's photograph in a line-up and testified that he was "absolutely positive" that petitioner was the gunman. (*Id.* at 120-22).

Mr. Moorehead testified that although he has had an intervening injury impairing his memory, at the time of the robbery, he was able to give a description to the police right after the robbery occurred and was able to identify the robber in a photographic lineup. However, he was unable to testify at trial that petitioner was the robber due to his memory loss. (*Id.* at 139-41).

At trial, Mr. Bradley testified that he had just parked on the street in front of his brother's apartment when a vehicle sped down the street and pulled up next to his truck. (*Id.* at 149-56). An individual wearing no mask pointed a gun at him, and then a second individual wearing a mask pointed a second gun at him and ordered him to give them his

belongings and keys. (*Id.*). A third individual wearing a hoodie exited the car and entered the truck, and they all drove away. (*Id.*). A short time later, Mr. Bradley heard the crash of the truck hitting a tree nearby, and police officers approached and took Mr. Bradley around the corner to where they had some men in custody. (*Id.*). Mr. Bradley saw four individuals exiting a police van, and he identified the three individuals who had just robbed him. (*Id.*). He noticed that the first individual wearing no mask had been wearing a white shirt at the time of the robbery but now was wearing one of Mr. Bradley's gray shirts that had been in his truck. (*Id.*). He identified this individual as petitioner in a photographic lineup and at trial. (*Id.*).

Finally, Mr. Robinson testified that he was putting the key in the ignition of his car when three vehicles pulled up next to him, blocking him in. (*Id.* at 167-69). Two individuals approached his car and instructed him, at gunpoint, to get out of the car and lay on the ground, face down. (*Id.*). One individual wearing a gray shirt pointed a gun to his head and told him repeatedly not to look at him, but Mr. Robinson testified that he had already seen him before receiving this instruction, as they were approaching the car and before he received the instruction not to look at him. (*Id.*). The two individuals took items from Mr. Robinson's person and then stole his car. (*Id.*). Mr. Robinson called the police, who eventually took him to a location nearby where four suspects were in a police paddy wagon, and Mr. Robinson identified them as the individuals who participated in the robbery. (*Id.*). He identified petitioner as the individual wearing a gray shirt who held a gun to his head. (*Id.*).

The totality of the circumstances do not suggest that there was a substantial risk of misidentification, given petitioner's own incriminating statements to police, multiple identifications by multiple victims, and petitioner's wearing a victim's stolen shirt. Accordingly, the trial court did not err in admitting the identifications at trial. Petitioner's claim for habeas relief on this basis is without merit.

### 2.    Petitioner's Statements to Police

Petitioner further argues that the trial court erred in admitting the statements he made to police.  He argues that these statements were obtained in violation of his rights against self-incrimination, right to counsel, and right to due process.  He challenges them on the basis that no audio tapes or writings were made confirming his statements.

In overruling petitioner's motion to suppress these statements before trial, the trial court heard testimony from two detectives regarding the circumstances of the confession. (Doc. 18-1 at 2-13).  Although the court noted that there may have been "trickery" or "subterfuge" involved, it found that the methods used by the police to obtain petitioner's statements were "not such that they would offend societal notions of fairness, nor were they such that they would have procured an untrustworthy confession." (*Id.* at 13).  The court found that petitioner was questioned for one hour, was advised of his rights prior to the police obtaining the statements, and waived his rights, indicating he understood his rights.  *Id.*  These facts do not demonstrate a violation of petitioner's constitutional rights, and petitioner does not allege any facts that would rise to a violation.

The admission of evidence at a state court trial is a matter of state law and will not form a basis for federal habeas relief, unless the state court's "evidentiary ruling infringes upon specific constitutional protection or is so prejudicial that it amounts to denial of due process." *Abdi v. Hatch,* 450 F.3d 334, 338 (8th Cir. 2006).  The state court's evidentiary ruling was not improper.  The admission of petitioner's statements did not amount to an error nor did it deny petitioner due process.  Petitioner's claim is meritless.

## C. Ground 3

In Ground 3, petitioner argues that the trial court erred in admitting identification evidence from Joel Juarez; allowing the state to use a police report to refresh the recollection of a witness, over petitioner's objection; admitting testimony of Demarco Moorehead regarding stolen items from Larry Belcarist, over petitioner's objection; and overruling petitioner's objections to the state's rebuttal closing argument.  He did not

raise these claims during state court proceedings, so they are procedurally defaulted, but they also fail on the merits.

1.    Identification Evidence from Joel Juarez

Similar to his arguments in Ground 2, petitioner contends that the trial court erred in admitting Joel Juarez' identification testimony because the photographs shown to Juarez provided him an "insufficient opportunity to assess the height and size of the lineup participants." (Doc. 1 at 23). At trial, Mr. Juarez testified that he was approached by two individuals the evening of June 8, 2009, as he was exiting his vehicle. (Doc. 18-1 at 89-90). They demanded at gunpoint that he give them his wallet, keys, and cell phone, and then they drove away in his car. *Id.* Juarez stated the individual with a gun was skinny and shorter than the other one, and he was black. *Id.* He testified that he met with detectives three days later and identified petitioner in a photographic lineup. (*Id.* at 91-92). On cross-examination, he testified that the individuals who robbed him had "covered their heads a little bit" so he couldn't make "a hundred percent identification." (*Id.* at 93). Juarez testified that his identification was based on what he remembered of the individual's build and the part of the face he could see. *Id.*

Petitioner has not pointed to facts demonstrating that the photographic lineup was unduly suggestive. As discussed above, the record indicates that the photo lineup from which victim Juarez identified petitioner as the person who had robbed him at gunpoint was conducted under circumstances suggesting his identification was reliable. The lineups were comprised of photos of several individuals and did not single petitioner out in any way either by the behavior of the police personnel administering the tests or by the photographs themselves. (Doc. 18-1 at 91-94, 99-102, 113, 121-23, 130, 141-43).

Petitioner argues the photographic lineup did not show the height or size of the individuals pictured. However, his trial counsel cross-examined Mr. Juarez on this issue at trial. Juarez testified he based his identification not only on build but also on the part of the face he could see. (Doc. 18-1 at 92-93). Furthermore, petitioner has not demonstrated he was prejudiced by Juarez's identification. Besides Juarez's testimony,

petitioner was identified by six other individuals. (*Id.* at 112, 121, 140-41, 147, 154-56, 171-72).

Petitioner's claim for habeas relief on this basis fails on the merits.

### 2. Police Report to Refresh Recollection

Petitioner also contends that the trial court erred in allowing the State to use a police report to refresh the testimony of witnesses Bill Duffe and Rickie Roberts. Mr. Duffe testified that he had just sat down in his car when a car drove up, blocking him in, and an individual stepped out of it demanding that he give him money. (Doc. 18-1 at 107-09). Mr. Duffe testified that he handed the individual all the cash he had. *Id.* Mr. Duffe was able to write down the license plate of the vehicle before it drove away. (*Id.* at 109). At trial a year later, Mr. Duffe was unable to recall the license plate number. *Id.* The State used the police report to refresh his recollection as to the license plate number he gave to the police, and Mr. Duffe testified that it looked like the license number he saw on the night in question. *Id.* Petitioner argues that the use of the police report to refresh Mr. Duffe's recollection violated his right to confront and cross examine the witnesses against him.

Mr. Roberts testified that he was in a parking lot trying to help a co-worker get his keys out of his car when they were approached by two individuals who robbed them at gunpoint. (*Id.* at 118-20). The individuals then got in a car and drove away. (*Id.* at 121). Mr. Roberts testified he was able to get a partial plate number. *Id.* As with Mr. Duffe, the State used a police report to refresh his recollection as to the partial plate number he gave to the police, and Mr. Roberts then testified that the partial plate was "UC1." *Id.* Petitioner argues that this testimony prejudiced him because it linked the robbery of Mr. Roberts with the prior incidents and was improper because Mr. Roberts did not write the report. Petitioner argued that the admission of Mr. Robert's testimony violated his right to confront and cross-examine the witness against him.

As previously stated, the admissibility of evidence at a state trial is a matter of state law and cannot constitute a basis for federal habeas relief, unless the state court's

"evidentiary ruling infringes upon specific constitutional protection," *Abdi v. Hatch,* 450 F.3d 334, 338 (8th Cir. 2006); "is so prejudicial that it amounts to denial of due process," *id.*; or is "so egregious that [it] fatally infected the proceedings and rendered his entire trial fundamentally unfair." *Skillicorn v. Luebbers,* 475 F.3d 965, 972 (8th Cir. 2007) (citations omitted). Petitioner's counsel was familiar with the document used to refresh witnesses Duffe's and Robert's recollections, and petitioner's counsel was able to cross-examine both witnesses at trial. (Doc. 18-1 at 110, 122). Admitting both Duffe's and Roberts' testimonies did not infringe any specific constitutional right of petitioner, did not deny petitioner's right to due process, and did not render petitioner's entire trial fundamentally unfair. Petitioner's claim is meritless.

3.      Alleged Hearsay Testimony of Demarco Moorehead

Petitioner further argues that the trial court erred in admitting the hearsay testimony of Demarco Moorehead. At trial, Mr. Moorehead testified that he and his brother were approached by three individuals who robbed them. The state asked Mr. Moorehead whether anything had been taken from his brother, to which Mr. Moorehead replied, "He said they got some money from him too." (Doc. 18-1 at 139). The court overruled defense counsel's hearsay objection. *Id.* Even assuming without finding this was an error, the admission of this statement was not so prejudicial that it resulted in a denial of due process. Victim witness Moorehead testified that the individuals stole his own wallet, which had $800 in it, his Giovanni watch, and his diamond earrings. (*Id.* at 139). The admission of Moorehead's statement that his brother's money was also stolen does not merit habeas relief, and petitioner's claim on this basis is denied.

4.      The State's Rebuttal Closing Argument

In his final claim under Ground 3, petitioner argues that the trial court erred in overruling defense counsel's objections to the state's rebuttal closing argument. (Doc. 1 at 24-25). Petitioner contends that the prosecutor's statement "you heard no evidence

that Defendant was beaten, coerced"[2] was an improper comment on petitioner's silence. *Id.* Petitioner argues that "one would not expect a police detective to testify that he beat or coerced a defendant into making a statement, so the obvious inference to be drawn by the jury from making a remark is that 'you would have heard Defendant testify if his confession was beaten out of him.'" *Id.*

---

[2] According to the transcript of the trial, the prosecutor stated the following:

> [Prosecutor]: Now the statements. No evidence has been offered that Detective Rodebaugh or Detective Murphey abused the Defendant in any way. No evidence has been offered that they forced him to do anything against his will. No evidence has been offered if anything inappropriate or not right occurred in those interviews.
>
> [Defense]: Your Honor, may we approach? [Counsel approached the bench and the following proceedings were had:] Your Honor, this argument is essentially a statement on the Defendant's silence and it is completely inappropriate.
>
> [Prosecutor]: That is not the intention at all. The intention is that no cross-examination questions were answered. When asked if the detectives abused him in any way the detectives said, no, they did not.
>
> The Court: Rephrase your statement.
>
> [Prosecutor]: Yes ma'am. [The following proceedings returned to open court:] The detectives told you that nothing happened inappropriate in those rooms, okay? If they were going to make something up guys, all right, don't you think they would've had them confess to everything? They are going to make a partial confession where they are minimizing their involvement saying I was the lookout? If they are going to make something up don't you think they are going to go for it? Yeah. Why wouldn't you have him admit to everything? That's what happened. That's what the Defendant said in that room with the detectives.

(Doc. 18-1 at 261-62).

Petitioner further asserts that the trial court erred in overruling the objection to the statement that petitioner's DNA profile was found on seized gloves, because he alleges only a "mixture" and not a "profile" was found on the gloves.  *Id.*  The exchange is recorded in the transcript as follows:

[Prosecutor]: DNA, partial profile. . . . Martez Hunter, his partial profile on the Easton gloves found like bread crumbs stemming from the crashed Dodge Ram.

[Defense]:     Objection, Your Honor.  I believe this is a misstatement of the evidence.

The Court:    Overruled.   The jury is going to be guided by their recollection of the evidence as they recall it.

[Prosecutor]: So, is the DNA perfect?  No.  We're not talking about blood. We're not talking about body fluid, all right?  That's what gives us the best numbers, all right, but it does corroborate exactly what the witnesses say.   It corroborates exactly the physical evidence.  Martez Hunter was arrested next to 3950 North Market.  The gloves with his partial profile on them are leading –

[Defense]:     Your Honor, again, I object to the prosecutor saying that a partial profile –

[Prosecutor]: May I get my time back on this, Judge?

[Defense]:     – that a DNA mixture was found on the gloves.

The Court:    Very well.   The jury is going to be guided by their recollection of the evidence as they recall it.  Your time is being reserved.  Move forward.

[Prosecutor]: Thank you, Your Honor.  Partial profile on those gloves goes directly back to the Dodge Ram that the Defendant fled from, all right?  He is found in the yard where that chrome weapon was recovered the next day on his statement.

(Doc. 18-1 at 262).

A prosecutor's improper closing argument "can violate the Fourteenth Amendment if [it] so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Kennedy v. Kemna*, 666 F.3d 472, 481 (8th Cir. 2012) (citations omitted). "Federal habeas relief should only be granted if the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial," and if there is a reasonable probability that the outcome would have been different but for the improper closing argument. *Id.* (citations omitted).

In *Kennedy v. Kemna*, prosecutors referred to a witness's identification of the defendant as direct evidence to his guilt, referred to the defendant as an evil "executioner," told the jury that it would be "embarrassed" if it did not convict the defendant, and referenced the defendant's post-arrest silence. The Eighth Circuit held that while some of the prosecutor's statements may have been improper, the jury was instructed that closing arguments are not evidence and there was significant independent evidence of the defendant's guilt. *Id.*

Petitioner cites to no controverting facts suggesting these alleged errors were misstatements of the evidence, nor does he cite to any authority to support his claim that these statements were improper. The statements to which he objects were relatively inconsequential; even without them, substantial evidence supported his convictions in this case. The statements to which he objects were not so inflammatory and outrageous to constitute a due process violation and entitle petitioner to habeas relief. Furthermore, the trial judge stated to the jury multiple times immediately following this statement that the jury would "be guided by their recollection of the evidence as they recall it." (Doc. 18-1 at 261-62). Accordingly, this claim and the entirety of Ground 3 are meritless.

## D. Ground 4

In Ground 4, petitioner alleges that the trial court erred in sustaining the state's objection to defense counsel's argument that the state had not shown petitioner acted alone in the armed criminal action counts and by permitting extensive argument by the

state that it need not prove petitioner actually used a weapon to convict him as a principal for armed criminal action. Missouri state courts addressed both of these claims and did not err in denying them.

### 1. Defense Counsel's Closing Arguments

Petitioner first argues that the trial court erred in sustaining the state's objection to defense counsel's statement in closing arguments that the state had not shown petitioner acted alone in the armed criminal action counts. Petitioner argues that the state's evidence did not show he solely used the gun in all the armed criminal action counts, and he was entitled to hold the state to its burden. The Missouri Court of Appeals rejected this claim on direct appeal, explaining:

> "Trial courts have wide discretion in controlling the scope of closing argument." *State v. Barton*, 936 S.W.2d 781, 783 (Mo. banc 1996). A trial court abuses its discretion when it precludes defense counsel from making "any argument to the jury that is essential to the defense of the accused and is justified by evidence and the reasonable inferences that might be drawn therefrom." *Id.* at 784. However, even if an abuse of discretion is shown, we will not reverse a case unless the error prejudiced the defendant. *Id.* at 787; *state v. Forrest*, 183 S.W.3d 218, 226 (Mo. banc 2006). "Prejudice is shown when there is a reasonable probability that, in the absence of the trial court's abuse of discretion, the verdict would have been different." *State v. Rush*, 949 S.W.2d 251, 256 (Mo. App. S.D. 1997).
>
> Defense counsel's closing remarks related to the State's burden of proof as prescribed by the jury instructions for each count of armed criminal action. More specifically, defense counsel explained that, according to the submitted jury instructions, the jury could find Defendant guilty of robbery under a theory of accomplice liability, but it could not find Defendant guilty of armed criminal action unless the Defendant held the weapon in the underlying robbery. These remarks were merely a description of the jury instructions and an explanation of how to follow them in deliberations. Defendant does not argue, nor do we find, that this argument was essential to his defense. *See e.g., Barton*, 936 S.W.2d at 784. Furthermore, we assume the jury reads and follows the instructions as submitted. *State v. Avery*, 275 S.W.3d 231, 234 (Mo. banc 2009).

Even assuming arguendo, that the trial court abused its discretion when it sustained the prosecutor's objection to Defendant's closing argument, Defendant failed to demonstrate prejudice. *See e.g., Forrest*, 183 S.W.3d at 227; *see also State v. Dismang*, 151 S.W.3d 155, 163 (Mo. App. Ct. 2004) ("Error is reversible only when it constitutes both an abuse of discretion by the trial court and prejudices the defendant."). While the trial court sustained the prosecutor's objection, the State did not request, and the trial court did not sua sponte deliver, a limiting instruction to the jury directing it not to consider Defendant's argument. *See Forrest*, 183 S.W.3d at 227. As a result, defense counsel was able to communicate, and the jury was able to consider, Defendant's argument that the State failed to satisfy its burden to show that Defendant himself held the gun during each charged robbery. Point denied.

(Doc. 18-5 at 6-8).

Although petitioner complains that the trial court erred in sustaining the state's objection to defense counsel's closing arguments on this issue, he does not argue that the instructions submitted to the jury incorrectly described both the state's burden of proof on armed criminal action charges and the elements required for accomplice liability. Petitioner has not established that the objection or the court's sustaining the objection changed the outcome of the trial, so as to establish prejudice. As the Missouri Court of Appeals explained, the jury was free to consider defense counsel's closing argument in question, despite the state's sustained objection, because the court did not issue a limiting instruction. The trial court's sustaining of the state's objection did not infringe upon any specific constitutional protection, deny due process, or render the trial fundamentally unfair. *See Abdi*, 450 F.3d at 338; *Skillicorn*, 475 F.3d at 972. Accordingly, the state court decisions on this matter were not contrary to federal law. This claim is without merit.

2.     State's Rebuttal Closing Argument

Finally, petitioner argues that the trial court erred in allowing the prosecutor to argue during his rebuttal closing argument that "[t]here is absolutely no requirement whatsoever that the Defendant have a gun in his hand to be guilty of an ACA [armed criminal action]." (Doc. 18-1 at 260-61). Although this claim was not fully exhausted in

Missouri state courts, for purposes of procedural default, the Missouri Court of Appeals nevertheless addressed it, explaining:

> In his second and final point on appeal, Defendant claims that the trial court erred in allowing the prosecutor, during his rebuttal closing argument, to argue that "to convict [Defendant] as a principal for armed criminal action, the state need not prove [Defendant] actually used a weapon . . ." Defendant concedes that he did not preserve this issue and asks this court to review for plain error. Rule 30.20. "Plain error review mandates reversal only if the error results in manifest injustice." *State v. Shum*, 866 S.W.2d 447, 460 (Mo. banc. 1993).

> "The trial court is in the best position to appraise the consequence of a closing argument, and has broad discretion to determine if the particular line of argument is proper." *State v. White*, 247 S.W.3d 557, 563 (Mo. App. Ct. 2007). "Misstatements of the law are impermissible during closing argument, and a positive and absolute duty rests upon the trial judge to restrain such arguments." *Id.* However, even if the prosecutor's argument was improper, reversal is appropriate only if the defendant establishes that the comment about which he complains had a decisive effect on the jury's determination. *State v. Miller*, 226 S.W.3d 262, 266 (Mo. App. Ct. 2007). Generally, a prosecutor's misstatements of the law in closing argument are not deemed reversible error when the proper law is given to the jury because we assume the jury followed the law as stated in the instructions. *State v. Chism*, 252 S.W.3d 178, 186 (Mo. App. Ct. 2008).

> In the instant case, the prosecutor's comments about accomplice liability were not legally incorrect. The armed criminal action statute applies to accomplices. *State v. Howard*, 896 S.W.2d 471, 496 (Mo. App. Ct. 1995). Under the theory of accomplice liability, a conviction does not require that a defendant have personally performed all of the acts necessary to constitute a crime. *State v. Anderson*, 953 S.W.2d 646, 647 (Mo. App. Ct. 1997). "If a defendant has embarked upon a course of criminal conduct with others, he is responsible for those crimes which he could reasonably anticipate would be a part of that conduct." *Id.* (citations omitted).

> Because the jury instructions for armed criminal action referred the jury back to the instructions for robbery and attempted robbery, which were premised on accomplice liability, we do not believe these comments had a decisive effect on the jury's verdict. *See e.g., State v. Thomas*, 75 S.W.3d 788, 791 (Mo. App. Ct. 2002).

To the extent that the prosecutor's remarks about the law of accomplice liability conflicted with the submitted jury instructions for armed criminal action, "we assume the jury followed the law as stated in the instructions." *Chism*, 252 S.W.3d at 186; *see also State v. Bennett*, 201 S.W.3d 86, 91 (Mo. App. Ct. 2006). Furthermore, the prosecutor's argument was in retaliation to Defendant's argument that the State had to prove that Defendant held the gun in each robbery in order to convict him on the accompanying charges of armed criminal action. "A prosecutor may retaliate to an issue raised by a defendant's closing argument even if the prosecutor's argument would otherwise be improper." *State v. Petty*, 967 S.W.2d 127, 136 (Mo. App. Ct. 1998). Point denied.

(Doc. 18-5 at 8-9).

As discussed above, a prosecutor's closing argument only violates the Constitution if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Kennedy v. Kemna*, 666 F.3d 472, 481 (8th Cir. 2012) (citations omitted). Petitioner has not demonstrated that the trial court erred in allowing the closing argument at issue because, as the Missouri Court of Appeals points out, these comments were not legally incorrect. The Missouri armed criminal action statute applies to accomplices, *State v. Howard*, 896 S.W.2d 471, 496 (Mo. App. Ct. 1995), so the prosecutor correctly informed the jury that the State did not have to prove that petitioner used a weapon in order to convict him on this charge. Moreover, in light of the overwhelming evidence against him and the jury instructions setting forth the correct law, petitioner cannot demonstrate that these comments, even if incorrect, fatally infected the trial with unfairness or otherwise prejudiced the outcome of the trial. The state court decision was not contrary to federal law.

Petitioner's Ground 4 is denied in all respects.

## VI. CONCLUSION

For the reasons set forth above, the petition of Martez Hunter for a writ of habeas corpus is denied. Petitioner has made no substantial showing that he was deprived of a constitutional right. Therefore, a certificate of appealability is denied. 28 U.S.C. § 2253(c)(2).

An appropriate Judgment Order is issued herewith.

_____/S/   David D. Noce_____
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 23, 2018.